385 So.2d 83 (1980)
In the Interest of D.B. and D.S.
No. 56237.
Supreme Court of Florida.
May 16, 1980.
*86 Jim Smith, Atty. Gen., and Janet E. Ferris, Asst. Atty. Gen., Tallahassee, for State of Florida, appellant.
Stuart Simon, County Atty., and Mark A. Dresnick, Asst. County Atty., Miami, for Dade County.
*87 Melvin S. Black, Miami, for Robert Singer and Robert Smith.
John B. Kelley, Chairman and Jennifer Hurst, Dade County Bar Ass'n, Circuit Court-Juvenile Committee, Miami, for intervenor.
OVERTON, Justice.
This appeal by the State of Florida is from circuit court orders directing the state to pay attorney's fees for representation of both indigent children and parents in all juvenile dependency proceedings. The orders by the circuit court held that the state must provide this legal representation as a fundamental constitutional right under the due process clause of the Florida Constitution and the United States Constitution. This finding was based on the decision of the United States District Court for the Southern District of Florida in Davis v. Page, 442 F. Supp. 258 (S.D.Fla. 1977).
The holding of the circuit court in the instant cases directly construed the Florida and the United States Constitutions. The circuit court order, which was precipitated by the federal district court decision, affects all juvenile dependency proceedings in Dade County, which total approximately 2,000 annually, and could affect the 20,000 annual dependency proceedings statewide. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
We reject the holdings of both the state circuit court and the United States District Court that all indigent participants in juvenile dependency proceedings are entitled, as a fundamental right, to have counsel supplied to them by the state. We find that a constitutional right to counsel necessarily arises where the proceedings can result in permanent loss of parental custody. In all other circumstances the constitutional right to counsel is not conclusive; rather, the right to counsel will depend upon a case-by-case application of the test adopted in Potvin v. Keller, 313 So.2d 703 (Fla. 1975). We recognize that in all instances the trial court must ensure that proper notice and an opportunity to be heard be provided to the participants. We find that when counsel is constitutionally required, the county, rather than the state, must compensate appointed counsel under a formula which recognizes both the obligation of the government to provide counsel and the obligation of the legal profession to represent the poor. As a result of these findings, we direct the judiciary of this state to follow the views expressed in this opinion rather than the views expressed by the United States District Court in Davis v. Page. We find that the federal district court should have refrained from passing on this new constitutional right and allowed the claim to be presented in the state system.

Factual Circumstances
To fully explain these conclusions, it is necessary to set forth the specific facts of each of these two separate dependency causes.
At age five D.B. was surrendered by her mother to Catholic Services Bureau, Inc., for permanent commitment and adoption. The mother had been a prostitute and a heroin addict, and the child was born with a heroin addiction. The natural father was never married to the mother. At the time of the commitment proceedings, the father was incarcerated in the Florida state prison system for burglary, and was wanted in New Jersey for violation of parole. Approximately four months after surrender of the child, the mother sought to set aside her surrender of the child. In the trial court proceedings she was represented by Legal Services of Greater Miami, Inc. That representation is not in issue in these proceedings. Both the natural mother and the natural father sought custody of the child. The trial court appointed private counsel to represent the imprisoned father of this child, and appointed another private counsel as guardian ad litem for the child. The trial court found both natural parents to be unfit, stating:
[T]he Court finds that the said [mother] and [father] are unfit by reason of conduct, lifestyles and circumstances which have resulted in actual and constructive abandonment, abuse and neglect of the *88 child, and it is manifestly in the best interest of the child that the parental rights of the natural parents ... be terminated.
Following the entry of this judgment, the trial court entered an order directing the State of Florida to pay $1,090 to the attorney representing the father of the child and $1,000 to counsel acting as guardian ad litem for the child.
The second dependency action, for D.S., commenced when the child was nine months old because the child's mother, age 16, had abandoned him at his grandmother's home and was threatening to burn down the grandmother's house. The sixteen-year-old mother was taken into custody and detained in the juvenile detention center. Temporary custody of the child was sought by the Department of Health and Rehabilitative Services (HRS). Private counsel was appointed to represent the indigent mother in these temporary custody dependency proceedings. In addition, separate private counsel was appointed guardian ad litem for the child. The trial court found the child dependent and committed him to the temporary custody of HRS, with the understanding that the child eventually would reside with the teenage mother. This custody was subject to the continuing supervision of HRS to ensure proper care of the child. Subsequent to the entry of this temporary order and upon motion of appointed counsel, the trial court directed the State of Florida to pay $400 to counsel for the teenage mother and $285 to the guardian ad litem for the nine-month-old child.
In his order directing payment of attorney's fees in the instant cases, the trial court held:
The Judges of the Juvenile and Family Division of the Eleventh Judicial Circuit were named as defendants in a federal class action styled Davis v. Page, 442 F. Supp. 258 (S.D.Fla. 1977). The plaintiffs in that suit were Hilary Davis and all indigent parents who have been, or may be, defendants in child dependency proceedings in the Juvenile and Family Division of the Circuit Court of Dade County, Florida and who have not been advised of their right to counsel or afforded counsel at state's expense. The United States District Court entered judgment in favor of the plaintiffs and against the judges of this Court, and held that indigent parents have a constitutional right to appointed counsel in dependency proceedings... . [T]his Court must comply with the judgment of the federal court until and unless the decision is reversed or vacated, nothwithstanding [sic] the fact that the Florida Supreme Court has reached a contrary conclusion in Potvin v. Kelley [sic], 313 So.2d 703 (Fla. 1975). See U.S. Constitution, Art. VII, Cl. 2. This Court, therefore, holds that unless Davis v. Page is reversed on appeal, all indigent parents in dependency proceedings brought in this Court pursuant to Chapter 39, Florida Statutes, have a right to appointed counsel.

As a result of Davis v. Page, this Court also appoints attorneys as guardians ad litem to represent children of indigent parents in dependency proceedings when the Court determines that the appointment of a guardian ad litem is necessary to protect the child's interests. The Court is mindful that the Florida Supreme Court has held that the constitutional right to counsel is mandatory only in juvenile proceedings which concern a possible adjudication of delinquency. In the Interest of Hutchins, 345 So.2d 703 (Fla. 1977). Hutchins, however, cannot be controlling since this Court is now required by Davis to provide counsel to indigent parents in dependency proceedings. It is inconceivable to this Court that while it is required to appoint counsel for indigent parents in dependency proceedings, that an indigent child, whose interests may be adverse to the desires of his parents and the State, would not have an attendant right to appointed counsel. Since the Court is required to provide counsel for parents, the Court therefore holds that unless Davis is reversed on appeal, the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution as *89 well as the due process provisions contained within Article I, Section 9 of the Florida Constitution, require the Court to appoint counsel to serve as guardians ad litem for children in dependency proceedings when the Court finds that such an appointment is necessary in order to protect the intersts [sic] of the child... [Emphasis supplied.]
No better hypothetical script could have been written to set forth the problems of dependent children than is illustrated by these two factual situations. The principal issues are what legal representation is constitutionally required, and in what manner attorneys should be compensated when appointed to represent indigent parties in dependency matters.

Right to Counsel
The right of an indigent party to have counsel furnished in a legal proceeding is dependent upon the nature of the proceeding. This is an evolving constitutional issue which concerns the application of the sixth and fourteenth amendments of the United States Constitution.
In a series of well-publicized cases, the United States Supreme Court has found that a constitutional right to government-furnished counsel is mandated whenever imprisonment can be imposed. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)(right to counsel in a death case); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel for noncapital serious offenses); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (right to counsel in juvenile delinquency proceedings where the issue concerned the commitment of a juvenile for criminal conduct); and Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) (right to counsel for petit offenses whenever imprisonment could be imposed). On the other hand, the United States Supreme Court has rejected the absolute constitutional right to counsel in other civil and criminal matters. It rejected a right to counsel for parole revocation proceedings in Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and similarly rejected such a right for the purpose of seeking discretionary appellate review of criminal cases in Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in a proceeding terminating welfare payments, Justice Brennan rejected a procedural due process right to counsel, saying: "We do not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to retain an attorney if he so desires." 397 U.S. at 270, 90 S.Ct. at 1022.
We believe it is important to note that the right to counsel, as it has been presently established by the United States Supreme Court, applies only in criminal cases and flows principally from the sixth amendment right to counsel, applied to the states through the fourteenth amendment, rather than from the fourteenth amendment due process guarantee. Right to counsel in dependency proceedings, on the other hand, is governed by due process considerations, rather than the sixth amendment. The extent of procedural due process protections varies with the character of the interest and nature of the proceeding involved. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
The decision of the United States District Court in Davis directs circuit judges sitting on juvenile delinquency matters in Dade County, Florida, to provide counsel at government expense for indigent parents in all child dependency proceedings irrespective of the nature of the commitment, be it temporary or permanent. The Davis decision clearly concerned only temporary custody of the child. At the time of the action Ms. Davis had obtained weekend home visits with her son, and prior to the United States District Court's decision had secured the return of her son subject to continuing supervision under the jurisdiction of the circuit court. The Davis court, based on these facts, held there were fundamental due process and equal protection rights at stake that could be adequately safeguarded only by providing counsel to indigent parents *90 in all dependency proceedings. In so holding, the United States District Court rejected the view of the Ninth Circuit Court of Appeals in Cleaver v. Wilcox, 499 F.2d 940 (9th Cir.1974), which this Court expressly adopted in Potvin v. Keller, 313 So.2d 703 (Fla. 1975).
In Potvin, we stated:
In Cleaver the court indicated that the right to counsel in juvenile dependency proceedings would be determined by the relevant circumstances in each case, and that criteria for offering counsel would include at least (i) the potential length of parent-child separation, (ii) the degree of parental restrictions on visitation, (iii) the presence or absence of parental consent, (iv) the presence or absence of disputed facts, and (v) the complexity of the proceeding in terms of witnesses and documents. The Cleaver criteria not only comport with constitutional due process requirements, they offer a sensible set of guidelines for determining the inherent unfairness of a custody proceeding.
313 So.2d at 706 (footnotes omitted). The Davis court, in refusing to follow the Cleaver doctrine, failed even to discuss the law of this state as set forth in Potvin. The District Court proceeded to set down an absolute rule for the right to counsel at all stages of a dependency proceeding and directed that counsel must be available immediately following the service of the petition or seizure of a child. The circuit court in the instant cases went a step further than the federal judge in the Davis case and extended the right to counsel to the child in a juvenile dependency proceeding, reasoning that if counsel was required for the parents, it should also be required for the child to ensure protection of the child's interest. We reject Davis and reaffirm Potvin, finding the guidelines which it sets forth adequately safeguard the due process and equal protection rights of the parents.
To accurately characterize the proceeding involved, it should be recognized that juvenile dependency proceedings and juvenile delinquency proceedings have distinct and separate purposes. Dependency proceedings exist to protect and care for the child that has been neglected, abused, or abandoned. Delinquency proceedings, on the other hand, exist to remove children from the adult criminal justice system and punish them in a manner more suitable and appropriate for children. We reject the contention that In re Gault, which the Davis court found applicable, requires the appointment of counsel in a juvenile dependency proceeding. The holding in Gault, in our opinion, only requires the appointment of counsel for an indigent child in delinquency proceedings which might result in detention as a punishment. Further, there are numerous types of juvenile dependency proceedings, but all concern the care, not the punishment, of the child. Some provide very temporary types of relief and custody, while other dependency proceedings permanently terminate the custody and care of a child. See § 39, Fla. Stat. (1979); Bell, Dependency Law in Florida, 53 Fla.Bar J. 652 (1979).
We recognize that there is a constitutionally protected interest in preserving the family unit and raising one's children. Moore v. East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1976); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Because the interest at stake is so important and fundamental in nature, we recognize, consistent with our holding in Potvin, that a right to counsel may be required in certain circumstances.
We agree in part with the Davis court and the trial judge that counsel is necessarily required under the due process clause of the United States and Florida Constitutions, in proceedings involving the permanent termination of parental rights to a child, or when the proceedings, because of their nature, may lead to criminal child abuse charges.[1] It is our view that under *91 the Cleaver test, counsel will always be required where permanent termination of custody might result, but where there is no threat of permanent termination of parental custody, the test should be applied on a case-by-case basis.[2]
We conclude that where permanent termination or child abuse charges might result, counsel must be appointed for (1) the natural married or divorced indigent parents of the child, (2) the natural indigent mother of an illegitimate child, and (3) the natural indigent father of an illegitimate child when he legally has recognized or is in fact maintaining the child. We reject, however, any requirement for the mandatory appointment of counsel for the father of an illegitimate child who has not legally acknowledged or in fact supported the child.
It should be realized that the possible temporary loss of custody in a dependency matter is no different than what regularly occurs in domestic relation proceedings when custody is an issue.
Where the trial judge finds no constitutional right to counsel under Cleaver, he may nonetheless use his historical authority to provide legal assistance. Further, certain due process requirements must be observed even though counsel is not constitutionally required. All parents must be given notice of a dependency hearing, advised that they have a right to be represented by counsel of their choice, and afforded a period of time to obtain counsel which is reasonable under the circumstances.
Finally, we find there is no constitutional right to counsel for the subject child in a juvenile dependency proceeding. By statute, counsel as guardian ad litem must be appointed in any child abuse judicial proceeding under section 827.07(16), Florida Statutes (1979). In all other instances, the appointment of counsel as guardian ad litem for the child is left to the traditional discretion of the trial court, and should be made only where warranted under Florida Rule of Juvenile Procedure 8.300.

Payment of Counsel Fees
The determination of the respective responsibilities of the legal profession and the government in providing constitutionally required representation for indigents is a new and evolving problem. The common law did not ensure the poor a right to counsel; rather, it was the professional obligation of the American lawyer and his English counterpart to accept an assignment to represent an indigent party when so directed by the court, which occurred in selected and limited cases. Further, there was no right to compensation from the government or any other source for such representation.
The principal question that arises from the advent of a fundamental constitutional right to counsel in various classes of cases, which effectively began in 1963 with Gideon v. Wainwright, is whether the members of the bar should now be relieved of their *92 historical responsibility to represent the poor whenever the constitution mandates the right to counsel in a legal proceeding. In establishing a constitutional right to counsel in certain cases, the United States Supreme Court placed the obligation to provide counsel on the government rather than the individual members of the legal profession. There was no intention to place the entire fiscal burden on the legal profession to perform a function which is the constitutional responsibility of the government.
The common law obligation of the profession to represent the poor without compensation has been carried forward in contemporary practice by cases such as United States v. Dillon, 346 F.2d 633 (9th Cir.1965), cert. denied, 382 U.S. 978, 86 S.Ct. 550, 15 L.Ed.2d 469 (1966), which endorse the historical concept that one who is allowed the privilege to practice law accepts a professional obligation to defend the poor.[3] Some courts and commentators have expressed the contrary view that requiring court-appointed counsel to serve without compensation constitutes an unfair imposition upon the bar and an unfair "taking" of private property in violation of the due process clause.[4]
It is our view that the government has an obligation to provide legal representation when such appointment is required by the constitution, but lawyers should not be totally relieved of their professional obligation to provide legal services to the poor. In the absence of a statutory payment formula, we find that when the appointment of counsel is constitutionally required under Potvin, payment should be made under the formula expressed by the Supreme Court of New Jersey in State v. Rush, 46 N.J. 399, 217 A.2d 441, 448 (1966):
We are satisfied the burden is more than the profession alone should shoulder, and hence we are compelled to relieve the profession of it.
... But for the time being at least, we think the members of the bar should contribute something more, despite still other calls upon them for gratuitous service. To that end, the compensation should be less than that expected of a client who can pay. The rate should reimburse assigned counsel for his overhead and yield something toward his own support. In approximate terms the overhead of the average law office probably runs about 40% of gross income. To meet that expense and yield something to assigned counsel, we suggest compensation at 60% of the fee a client of ordinary means would pay an attorney of modest financial success.
When appointment of counsel is desirable but not constitutionally required, the judge should use all available legal aid services, and when these services are unavailable, he should request private counsel to provide the necessary services. Under these circumstances, no compensation is available, and the services are part of the lawyer's historical professional responsibility to represent the poor.
To the extent the government must provide fees for appointed counsel, such *93 payment must be made by the county under section 43.28, Florida Statutes (1979). This statutory provision was not considered by the trial court or the parties in this action. Section 43.28 provides: "The counties shall provide appropriate courtrooms, facilities, equipment, and, unless provided by the state, personnel necessary to operate the circuit and county courts." [Emphasis added.] This section was enacted to aid in the implementation of a new judicial article and was adopted immediately following the amendment of article V in 1972. In our opinion, when appointment of counsel is constitutionally required to represent an indigent, the case cannot proceed without such an appointment; consequently, such counsel is "personnel necessary" to operate the court. In such an instance, the trial court may require the county to pay appropriate attorney's fees for such representation absent any other statutory provision. We note that the counties are required by statute to pay such fees in criminal matters. §§ 27.53(2), 925.035(6), Fla. Stat. (1979).

Appointment of Counsel in the Instant Cases
In the instant case concerning D.B., the representation of the mother is not in question. The issues concern the appropriateness of the mandatory appointment of counsel for both the father and the child.
In our opinion, the indigent father of D.B. has no constitutional right to counsel. He was never married to the mother, and has neither legally recognized nor supported the child. We do not read Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), as requiring counsel to be appointed in such a circumstance. We recognize that the father is entitled to notice that the child is being permanently committed under section 39.413, Florida Statutes, and is allowed an opportunity to contest the commitment and be represented by private counsel under section 39.406, Florida Statutes. However, we find no statutory authority and no constitutional requirement to provide counsel for this father at public expense.
While we hold that the appointment of counsel to serve as guardian ad litem for a child is never constitutionally required in a dependency proceeding, it was an appropriate appointment under the facts of this case which include the mother's contest of a prior surrender of the child, the mother's history as a prostitute and heroin addict, and a father in prison seeking custody.
In the case relating to D.S., the sixteen-year-old mother was entitled to the appointment of counsel for the juvenile delinquency offense associated with the abandonment of her child. Absent the delinquency offense, we find there was no constitutional requirement that counsel be provided at state expense for this indigent mother when only temporary custody and supervision was sought. Similarly, the appointment of counsel as guardian ad litem for the nine-month-old child was not constitutionally required. Further, we find the appointment was not appropriate since the proceedings were instituted by HRS to protect the interests of the child and there were no factors here which would justify the appointment of a guardian ad litem in addition to HRS to safeguard the interests of the child.
Although we find the appointment of counsel for the father of D.B. and the appointment of a guardian ad litem for D.S. to be neither constitutionally required nor appropriate under the circumstances of these cases, we recognize counsel did in fact represent their designated clients at the trial court's direction with the understanding that they would be paid for their services. Therefore, we find that these causes should be remanded and counsel should be compensated in accordance with the Rush fee formula set forth in this opinion.

Abstention Doctrine
We find it necessary to address the federal abstention doctrine because our views expressed in this opinion do not conform to the decision of the United States District *94 Court in Davis v. Page. The right to counsel in juvenile dependency proceeding has not been addressed by the United States Supreme Court. Further, only one federal appellate court, the Ninth Circuit in Cleaver v. Wilcox, has written on the issue, and we have adhered to their view.
The United States Supreme Court has expressly developed a policy of self-restraint, directing the federal judiciary to avoid interference with state court proceedings and accept jurisdiction only when (a) the claimants have no opportunity to present their federal constitutional claims in state proceedings, or (b) there is bad faith conduct by the state, or (c) the challenged state statute is wholly and flagrantly violative of express constitutional prohibitions, in whatever manner and against whomever an effort might be made to apply it. Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The instant facts do not warrant federal intervention, particularly in light of the recent decision in Moore v. Sims. In Sims the United States Supreme Court reversed a federal intervention declaring unconstitutional the statutory scheme for child abuse proceedings in Texas, including the participants' right to counsel. The Court said: "Certainly, abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." 442 U.S. at 425-26, 99 S.Ct. at 2378.
The application of the abstention doctrine does not preclude judicial consideration of an alleged constitutional right; rather, it directs that a proceeding affecting state statutes or a state judicial procedure be resolved first in the state courts, absent bad faith by the state or the lack of a state forum or procedure with which to consider the particular contention.[5] In both the instant case and Davis, there was a direct avenue in the state juvenile dependency proceeding to raise the claim of a constitutional right to counsel. Appellees could have appealed an adverse finding from either a nonfinal order, see Florida Rule of Appellate Procedure 9.100, or a final judgment direct to the Supreme Court of Florida. Art. V, § 3(b)(1), Fla. Const.[6]
Florida courts have historically sought cooperation rather than confrontation with the federal judiciary. This is illustrated by the fact that we were the first state to establish a certification process by which a federal appellate court could certify a question of state law to the Supreme Court of Florida. § 25.031, Fla. Stat. (1979); Fla.R. App.P. 9.510. In this instance, however, we decline to defer to the decision of the United States District Court in Davis v. Page.

Conclusion
The instant trial court orders require the state to pay five separate attorneys, in addition to payment of counsel necessary to represent the state. In sum, seven lawyers would be necessary to resolve the issues in these two dependency matters. These factual circumstances illustrate the substantial legal and fiscal impact this trial court decision would have on the 20,000 annual juvenile dependency proceedings in this state. We could foresee that this relatively new civil process of juvenile dependency proceedings, intended to protect abandoned, neglected, or abused children, could be crushed by the combined weight of taxpayer expense for multiple legal representation *95 and the expansion of the process into more formalized adversary legal proceedings. The state might choose not to supply this protection for children unless or until a criminal abuse had occurred.
We have chosen the middle road in this opinion by requiring counsel to be appointed when parents are threatened with permanent loss of custody or when criminal charges may arise from the proceeding, and by applying the Cleaver test on a case-by-case basis in all other circumstances. In our view, this is clearly sufficient to protect both the safety of the children of this state and the constitutional rights of their parents. We direct Florida's judiciary to follow the dictates of this opinion as it concerns the right to counsel in juvenile dependency matters, until further modification or reversal by this Court or the United States Supreme Court. This directive, however, shall not apply to any Eleventh Circuit judges of the Juvenile and Family Division who might be under a direct, valid order of the federal district court in Davis v. Page until that order is reversed or vacated.
This cause is remanded to the trial court to reconsider the attorney's fees in accordance with the formula expressed in this opinion and to enter the appropriate orders directing the county to pay such fees when they are established.
It is so ordered.
ENGLAND, C.J., ADKINS, BOYD, SUNDBERG and ALDERMAN, JJ., and VANN, Associate Justice, concur.
NOTES
[1] This position aligns us with other state courts, all of which have recognized a fundamental right to counsel where indigent parents face a permanent loss of custody. Chambers v. District Court of Dubuque County, 261 Iowa 31, 152 N.W.2d 818 (1967); Danforth v. State Dept. of Health and Welfare, 303 A.2d 794 (Me. 1973); Reist v. Bay County Circuit Judge, 396 Mich. 326, 241 N.W.2d 55 (1976); In Interest of Friesz, 190 Neb. 347, 208 N.W.2d 259 (1973); Crist v. Division of Youth and Family Services, 128 N.J. Super. 402, 320 A.2d 203 (1974); In Re B, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (C.A.N.Y. 1972); State v. Jamison, 444 P.2d 15 (1968); In Re Adoption of R.I., 455 Pa. 29, 312 A.2d 601 (1973); In Re Myricks, 85 Wash.2d 252, 251 Or. 114, 533 P.2d 841 (1975); State ex rel. Lemaster v. Oakley, 203 S.E.2d 140 (W. Va. 1974). See Annot., 80 A.L.R.3d 1141 (1977).
[2] In so holding, we realize that there are some jurisdictions and commentators who would require appointment of counsel for indigent participants in all dependency proceedings. Chambers v. District Court of Dubuque County, 261 Iowa 31, 152 N.W.2d 818 (1967); Danforth v. State Dept. of Health and Welfare, 303 A.2d 794 (Me. 1973); Crist v. Division of Youth and Family Services, 128 N.J. Super. 402, 320 A.2d 203 (1974); In Re Myricks, 85 Wash.2d 252, 533 P.2d 841 (1975); Note, Child Neglect: Due Process for the Parent, 70 Colum.L.Rev. 415 (1970); Comment, The Indigent Parent's Right to Appointed Counsel in Actions to Terminate Parental Rights, 43 U.Cinn.L.Rev. 635 (1974).
[3] E.g., Tyler v. Lark, 472 F.2d 1077 (8th Cir.1973); Dolan v. United States, 351 F.2d 671 (5th Cir.1965); Sparks v. Parker, 368 So.2d 528 (Ala. 1979); Jackson v. State, 413 P.2d 488 (Alaska 1966); Weiner v. Fulton County, 113 Ga. App. 343, 148 S.E.2d 143 (1966); State v. Keener, 224 Kan. 100, 577 P.2d 1182 (1978); State v. Doucet, 352 So.2d 222 (La. 1977); Scott v. State, 216 Tenn. 375, 392 S.W.2d 681 (1965); See Comment, Indigents' Right to Appointed Counsel in Civil Litigation, 66 Geo.L.J. 113, 138 (1977).
[4] E.g., Bradshaw v. Ball, 487 S.W.2d 294 (Ky. 1972); State v. Green, 470 S.W.2d 571 (Mo. 1971); Kovarik v. County of Banner, 224 N.W.2d 761 (1975); Smith v. State, 92 Neb. 816, 118 N.H. 764, 394 A.2d 834 (1978); Bedford v. Salt Lake County, 22 Utah 2d 12, 447 P.2d 193 (1968); State v. McKenney, 20 Wash. App. 797, 582 P.2d 573 (1978); Hunter, Slave Labor in the Courts  A Suggested Solution, 74 Case and Com. 3 (July-August 1969); Comment, The Uncompensated Appointed Counsel System: A Constitutional and Social Transgression, 60 Ky.L.J. 710 (1972); See Conference on Legal Manpower Needs of Criminal Law, Report, 41 F.R.D. 389, 415-16 (1966); See generally Note, The Indigent's "Right" to Counsel in Civil Case, 43 Ford.L.Rev. 989 (1975); Annot., 21 A.L.R.3d 819 (1968, 1979 Supp.).
[5] See generally Comment, The Abstention Doctrine: Closing the Federal Forum, 29 U.Fla.L. Rev. 1029 (1977). We note that in each prior instance in which a new constitutional right to counsel has been established by the United States Supreme Court, the case passed through the state court system. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed.2d 158 (1932).
[6] Under the 1980 constitutional amendment, the appeal would proceed through the district courts of appeal rather than going directly to the Supreme Court. See Art. V, § 3, as amended April 1, 1980.