MAY, J.
The putative father appeals the termination of his parental rights. He argues the trial court erred in failing to appoint a lawyer for him when the Children’s Home Society (CHS) filed a notice of intended adoption plan. He also argues the court erred in failing to notify him before entering a default judgment and in denying his motion to set aside the default. We find no error and affirm.
Prior to the child’s birth, the mother was in frequent communication with CHS, a licensed child-placing agency. During her discussions with CHS, the birth mother identified the putative father.[1] After numerous meetings and phone conversations, the mother confirmed her desire to place the child for adoption. CHS then initiated the underlying proceeding by filing its Notice of Intended Adoption Plan with the trial court.
As required by section 63.062(3), Florida Statutes (2012), CHS served the putative father with the Notice of Intended Adoption Plan on September 17, 2012. The Notice advised him:
1) that he was named as the “potential unmarried biological father” of the birth mother’s unborn child;
2) that he was required to act within 30 days of being served;
3) his obligations under section 63.062(2)(b), Florida Statutes, including his obligation to file a Claim of Paternity with the Office of Vital Statistics;
4) the address of the clerk’s office to which he was required to send his responsive papers; and
5) the address of the Office of Vital Statistics to which he was to mail his Claim of Paternity Form.
CHS also included: (1) a blank claim of paternity form; (2) a sheet containing information to aid him in completing and *106 filing the form; and (3) a brochure published by the Florida Department of Health with regard to the Putative Father Registry.
The putative father failed to timely register his Claim of Paternity with the Putative Father Registry, and in fact failed to file any response with the trial court within the 30-day period. On October 24, 2012, the trial court entered a default judgment against him.
The next day, the birth mother executed her consent to the adoption and placed the child with CHS. On November 2, 2012, CHS initiated the second phase of the adoption proceedings by filing a verified petition for termination of parental rights and permanent commitment for adoption.
Two months after receiving a copy of the Notice of Adoption, the putative father, through his mother, filed a letter with the trial court objecting to the planned adoption. The letter was not signed, witnessed, or notarized, and did not otherwise comply with the requirements of section 63.062(2)(b)(2), Florida Statutes (2012).
After the putative father failed to timely file any motion addressing the default judgment, the trial court set another status conference. Notice of the status conference was mailed to the putative father at his current location. He arranged to appear at the hearing.
At the status conference, the putative father reiterated his objection to the adoption plan. He completed an indigency affidavit; the trial court entered an order appointing counsel, and gave him ten days to file a motion to set aside the default judgment.
Through counsel, the putative father moved to set aside the default, alleging excusable neglect, due diligence, and a meritorious defense. At the hearing, he testified that prior to his incarceration he provided the mother with income, clothing and diapers, and attended “most” of her doctor’s appointments. He had been employed as a laborer, and he sometimes worked with his mother, who cleaned houses and buildings. While incarcerated, he was studying for the GED, and had plans to work upon his release.
He testified that he knew he had to file a response after being served with the Notice of Adoption; had the ability to prepare and write a response; and had the ability to mail documents from the detention center where he was being held. Instead, two months after receiving the Notice of Adoption, he wrote a letter to his mother, but did not mail the response to the trial court or anyone else. He called CHS, but did not leave a voicemail message because he could not receive return phone calls in jail.
The trial court denied the motion to set aside the default. The trial court found that the putative father “chose to mail his response to his mother rather than comply with the requirements of Chapter 63 and provide a response to [CHS] and the Court and register with the Putative Father Registry.” The trial court determined that he had shown neither excusable neglect nor due diligence to warrant setting aside the default.
The trial court set a final hearing on CHS’s Petition for Termination of Parental Rights and Permanent Commitment for Subsequent Adoption for May 3, 2013. Just prior to that hearing, the putative father’s counsel moved to stay the final hearing pending our ruling on the non-final appeal of the order denying his motion to set aside the default. But the trial court denied the motion for a stay, and entered a Final Judgment of Termination of Parental Rights and Order of Permanent Commitment for Subsequent Adoption. The trial court suspended the final *107 judgment pending this appeal. We consolidated the appeal from the denial of the motion to set aside the default and the appeal from the final judgment.
On appeal, the putative father argues the trial court committed fundamental error by not appointing him counsel until after the 30-day time period for compliance with the statutory requirements of Chapter 63 had expired. CHS responds that the trial court did not commit fundamental error because the putative father was entitled to counsel only if he filed the proper paperwork, pursuant to Chapter 63. We agree with CHS and affirm.
We have de novo review as this appeal involves questions of statutory interpretation and constitutional rights. See Borden v. E.-European Ins. Co., 921 So.2d 587, 591 (Fla.2006); Hilton v. State, 961 So.2d 284, 293 (Fla.2007).
Indigent parents have a right to an attorney under the Due Process Clause whenever a proceeding can result in a permanent loss of parental rights. See In re D.B., 385 So.2d 83, 90 (Fla.1980). That right is limited to “(1) the natural married or divorced indigent parents of the child, (2) the natural indigent mother of an illegitimate child, and (3) the natural indigent father of an illegitimate child when he legally has recognized or is in fact maintaining the child.” Id. at 91. Our supreme court rejected “any requirement for the mandatory appointment of counsel for the father of an illegitimate child who has not legally acknowledged or in fact supported the child.” Id. (emphasis added).[2]
Sections 63.062(2)(b) & (3)(a) delineate the steps that a putative father must take to legally recognize a child and preserve his parental rights. Within 30 days of receipt of service of a notice of intended adoption plan, the putative father must: (1) file a claim of paternity with the Florida Putative Father Registry; (2) file a verified response with the court stating that he is personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support; and (3) provide support for the birth mother and child. § 63.062(2)(b), (3)(a), Fla. Stat. (2012). “If an unmarried biological father fails to take the actions that are available to him to establish a relationship with his child, his parental interest may be lost entirely, or greatly diminished, by his failure to timely comply with the available legal steps to substantiate a parental interest.” § 63.053(1), Fla. Stat. (2012).
A putative father does not have a complete and absolute parental right; he has only “an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood ....” § 63.022(l)(e), Fla. Stat. (2012). Commitment to the responsibilities of parenthood must be shown in accordance with the requirements of Chapter 63. Id.
Here, the father had an inchoate interest prior to filing the paperwork required by Chapter 63. Once he was served with the Notice of Adoption, he had 30 days to file the required paperwork. He faded to do so. The clear intent of the Legislature in section 63.062(2)(e) is that a putative father, who does not comply with the re *108 quirements of section 68.062(2), is “deemed to have waived and surrendered any rights in relation to the child.” Heart of Adoptions, Inc. v. J.A., 963 So.2d 189, 197 (Fla.2007). Until a putative father complies with the statute, he has no constitutionally-protected right to counsel. See In re D.B., 385 So.2d at 91.
We find no merit in the other issues raised. We therefore affirm.

Affirmed.

GROSS and FORST, JJ., concur.

. The putative father is currently incarcerated until March 2014. He has been convicted of a felony on five occasions.

. We are aware that the Second District has suggested that such a right might attach if the sole basis for granting a petition for termination of parental rights was the parent’s "failure to timely comply with the requirement of the Notice of Intended Adoption Plan...." S.C. v. Gift of Life Adoptions, 100 So.3d 774 (Fla. 2d DCA 2012) (affirming the termination of parental rights on other grounds).