IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

July 27, 2018

GIFT OF LIFE ADOPTIONS, )
)
        Petitioner, )
)
v. )    Case No. 2D18-100
)
S.R.B., )
)
        Respondent. )
_____ )

BY ORDER OF THE COURT.

        Appellant, Gift of Life Adoptions (GLA), has filed a "Request for Written

Opinion" under Florida Rule of Appellate Procedure 9.330(a). We grant GLA's motion.

The prior per curiam dismissal dated May 23, 2018, is withdrawn, and the attached

opinion is issued in its place. No further motions will be entertained.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.



MARY ELIZABETH KUENZEL, CLERK

GIFT OF LIFE ADOPTIONS, )
)
          Petitioner, )
)
v. )     Case No. 2D18-100
)
S.R.B., )
)
          Respondent. )
_____ )

Opinion filed July 27, 2018.

Petition for Writ of Certiorari to the Circuit
Court for Pinellas County; Kathleen
Hessinger, Judge.

Timothy M. Beasley, Pinellas Park,
for Petitioner.

Ita M. Neymotin, Regional Counsel,
Second District, and Ngozi C. Acholonu,
Assistant Regional Counsel, Office of
Regional Conflict Counsel, Clearwater,
for Respondent.


LUCAS, Judge.

        Gift of Life Adoptions (GLA) is an adoption agency that is endeavoring to

facilitate a baby's adoption by a prospective couple.  As part of the adoption process,

pursuant to section 63.089, Florida Statutes (2017), GLA initiated the underlying action

to terminate the parental rights of the baby's biological parents.  The biological mother

of the baby, who had voluntarily surrendered her child to GLA for adoption, consented

to the termination of her parental rights. The present controversy stems from the litigation to terminate S.R.B.'s parental rights, whom GLA refers to as "an unmarried putative biological father" of this child.

GLA served S.R.B. with a notice of an intended adoption plan while he was incarcerated in the Sarasota County Jail.[1] In response, S.R.B. filed a handwritten paper in which he stated that he was the father of the baby and that he did not waive or consent to the termination of his parental rights. S.R.B. further stated that he was indigent "and would like the court to appoint an attorney to protect his right's [sic] as a parent." When informed by the clerk of the circuit court that it could not appoint him counsel, S.R.B. later filed a handwritten motion for the appointment of counsel to represent him in the termination proceeding.

GLA then filed a motion for default, arguing that because S.R.B. failed to comply with the statutory requirements of sections 63.062(2)(b)(2) and (3)(a), Florida Statutes (2017), his handwritten responses were insufficient, and he had therefore waived and surrendered any rights to the child. The circuit court held a hearing on GLA's motion, at which S.R.B. appeared telephonically and renewed his request for a court-appointed attorney. Relying upon language within this court's holding in S.C. v. Gift of Life Adoptions, 100 So. 3d 774 (Fla. 2d DCA 2012), the circuit court felt bound to

_____

[1]From our limited record, it appears that the biological mother may have disclosed to GLA that S.R.B. was the baby's biological father. S.R.B. was not named on the child's birth certificate, nor, at the time the proceeding was commenced, had S.R.B. registered with the Florida Putative Father Registry under section 63.054, Florida Statutes (2017).

deny GLA's motion for default in order to appoint S.R.B. counsel.[2] GLA now challenges

that order in this timely petition for writ of certiorari.

The crux of GLA's argument for certiorari relief is that the circuit court

departed from the essential requirements of law when it appointed S.R.B. counsel and

that that error visited a material injury upon someone (GLA does not specify who)

because the appointment of counsel "delays and places at risk" this child's prospective

adoption. The substantive question GLA raises concerning S.R.B.'s right to counsel is a

difficult one.[3] But we cannot reach it in this certiorari proceeding.

---

[2]In S.C., we held that a putative father's "belated" appointment of counsel after an initial hearing in a termination proceeding had concluded did not deprive him of due process. 100 So. 3d at 775. The majority opinion concluded with the observation:

> If the only basis of the trial court's granting of the petition
> was S.C.'s failure to timely comply with the requirements of
> the Notice of Intended Adoption Plan, we might reach a
> different conclusion because we agree that the filing
> requirements are very technical and might be a challenge to
> the nonlawyer biological father.

Id. GLA argues that, to the extent S.C.'s comments about the "different conclusion" we "might reach" concerning the appointment of counsel were not dicta, they conflict with the Fourth District's holding in K.H. v. Children's Home Society, 120 So. 3d 104 (Fla. 4th DCA 2013). In K.H., the Fourth District concluded that "[u]ntil a putative father complies with the statute [section 63.062], he has no constitutionally-protected right to counsel." 120 So. 3d at 108 (citing In the Interest of D.B., 385 So. 2d 83, 91 (Fla. 1980)).

[3]In his concurring opinion in S.C., our former colleague, Judge Davis, succinctly stated the problem:

> [I]t is unclear whether an unmarried biological father who has
> failed to comply with the registration requirements of the
> Florida Putative Father Registry provisions is a party to the
> termination-pending-adoption procedure—and thus entitled
> to assistance of counsel—or whether he is not a party since
> he is deemed to have waived his consent to adoption and
> notice to all further proceedings.

Our jurisdiction to issue a writ for the "extraordinary remedy" of certiorari, Reeves v. Fleetwood Homes of Fla., Inc., 889 So. 2d 812, 822 (Fla. 2004) (quoting Martin-Johnson, Inc. v. Savage, 509 So. 2d 1097, 1098 (Fla. 1987)), is well settled. To obtain certiorari relief, a petitioner must show "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." Reeves, 889 So. 2d at 822 (quoting Bd. of Regents v. Snyder, 826 So. 2d 382, 387 (Fla. 2d DCA 2002)). "The last two elements are jurisdictional and must be analyzed before the court may even consider the first element." Williams v. Oken, 62 So. 3d 1129, 1132 (Fla. 2011) (citing Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 527 (Fla. 1995)). The petition before us fails to meet either jurisdictional prong.

GLA has not cited, and we have not located, a single published decision where a court has construed a lawyer's representation to be, in and of itself, a cognizable, much less irremediable, injury in a termination of parental rights proceeding. Quite the contrary, whatever delay the presence of an opposing attorney could be said to entail, Florida law recognizes that indigent parents are *entitled* to court-appointed counsel in a proceeding to terminate their parental rights. Cf. J.B. v. Fla. Dep't of Children & Family Servs., 768 So. 2d 1060, 1068 (Fla. 2000) ("The right to counsel in termination of parental rights cases is part of the process designed to ensure that the final result is reliably correct." (citing Dep't of Children & Family Servs. v. Natural Parents of J.B., 736 So. 2d 111, 117 (Fla. 4th DCA 1999))); O.A.H. v. R.L.A., 712 So.

100 So. 3d at 776 (Davis, J., concurring). We would take this opportunity to renew his plea for the legislature to address this issue and craft an appropriate balance between the vital, competing interests this issue implicates. Id.

- 4 -

2d 4, 7 (Fla. 2d DCA 1998) ("We believe that [In the Interest of D.B., 385 So. 2d 83 (Fla. 1980)] mandates the appointment of counsel to represent a non-consenting parent in a contested adoption proceeding when the parent is indigent and his or her consent to the adoption is sought to be excused under section 63.072(1), Florida Statutes (1993)."). And the premise behind GLA's argument in this petition—that the presence of a lawyer for a putative father in a contested termination of parental rights proceeding constitutes a material injury—strikes us as rather troubling. See generally Penson v. Ohio, 488 U.S. 75, 84 (1988) ("The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth—as well as fairness—is 'best discovered by powerful statements on both sides of the question.' " (quoting Irving R. Kaufman, Does the Judge Have a Right to Qualified Counsel?, 61 A.B.A.J. 569, 569 (1975) (quoting Ex Parte Lloyd (1822) Mont 70, 72n))); Fla. Bar v. Dove, 985 So. 2d 1001, 1010 (Fla. 2008) ("Lawyers who undertake representation in the vital areas of adoption, dependency, and delinquency and in other family law cases serve interests which have unexcelled importance in the law."). We are loathe to view what is a hallmark of adversarial proceedings in our judicial system as a material injury in this context.[4]

---

[4]GLA has cited to our per curiam, memorandum opinion in In the Interest of Baby Girl M., 231 So. 3d 593 (Fla. 2d DCA 2017), in which this court reviewed a lower court's order permitting an unmarried biological father who failed to file a notarized form with the Florida Putative Father Registry to intervene in an adoption proceeding as "an example" of this court exercising certiorari jurisdiction. So it was; and that is about all that can be said of it. The Baby Girl M. memorandum opinion does not tell us what the alleged jurisdictional basis was for the underlying petition for writ of certiorari, or what material injury the petitioner alleged, or how that injury, whatever it was, was irremediable on plenary appeal. The elements of certiorari review, including its jurisdictional prongs, are not even mentioned in the opinion. Accordingly, it is inapposite to our disposition of the instant petition. Cf. Adelman Steel Corp. v. Winter,

In sum, GLA has not shown how the circuit court's order appointing counsel results in a material injury for the remainder of the case that cannot be corrected on postjudgment appeal.  Accordingly, we are without jurisdiction to review GLA's petition and must dismiss it without consideration of GLA's legal arguments.  See Oken, 62 So. 3d at 1132; Heggs, 658 So. 2d at 527.

Petition dismissed.


KELLY and MORRIS, JJ., Concur.

---

610 So. 2d 494, 502 (Fla. 1st DCA 1992) ("The holding or *ratio decidendi* of a decision is appropriately defined as the outcome of the case on the precise points discussed in the opinion stated in terms of the facts found to be material to the court's decision." (emphasis added) (quoting Adams v. Aetna Cas. & Sur. Co., 574 So. 2d 1142, 1153 n.10 (Fla. 1st DCA 1991))).