736 So.2d 111 (1999)
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, STATE OF FLORIDA, Petitioner,
v.
The NATURAL PARENTS OF J.B., Respondents.
No. 98-2255.
District Court of Appeal of Florida, Fourth District.
June 23, 1999.
*112 Robert A. Butterworth, Attorney General, Tallahassee, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for petitioner.
Bruce Rogow and Beverly A. Pohl of Bruce S. Rogow, P.A., and Thomas M. Ryan, Chandler, AZ, for respondents.
FARMER, J.
The issue in this termination of parental rights (TPR) proceeding is whether a Florida statute closing all hearings throughout the case to the public and media, requiring instead that the case be adjudicated behind closed courthouse doors, is unconstitutional. We uphold the statute and conclude that the state has the power to close such hearings, grant certiorari and quash the order of the circuit court.
The underlying facts of the case and the issues they have spawned are of only marginal import to today's question, but we shall set the scene. Currently pending are criminal cases against the parents for child abuse and also the present case to end their parental rights. The basis of the state's cases is not the more familiar kind of child abuse in which parents negligently fail to provide ordinary care, food, health care and housing. Instead, the state has alleged that these parents intentionally caused their 11-year old daughter to become ill enough to be repeatedly hospitalized. We are not called upon at this time to pass upon the merits of the case. Our only concern today is whether the entire TPR proceeding can validly be closed.
DCFS initially brought this civil action against the natural parents to have their child declared dependent and in need of care. The parents in turn moved to close the dependency proceedings and to enjoin all concerned from releasing information about the proceeding to anyone. They argued that it was against the child's interests to be exposed to the press and media and that it was in the best interests of the child that the proceedings be closed. At that point, DCFS took no stance on the closure issue, while the child's guardian supported it. A psychologist who had treated the child also opined that it was "imperative" that the dependency proceedings be closed and that the case be discussed only in the courtroom. In later hearings, a pediatric expert thought that a videotape deposition of the child would be very damaging. Also later the parents filed a second motion to impose a "gag" order to prohibit the release of any information, especially referring to leaks and gossip. In time, the trial court denied the motion to close court proceedings but without prejudice to the parents to move to close any later proceeding in the case if ongoing media coverage required the court to reconsider its ruling at a later date. The court also denied the motion for the gag order without prejudice.
Sometime thereafter, DCFS decided to change the character of the proceeding from a dependency case and filed motions to terminate the parental rights of respondents. With the case thus amended to a TPR proceeding, the requirements of section 39.467 came into effect.[1] That statute provides in part that "[a]ll hearings involving termination of parental rights are confidential and closed to the public." The parents response was, in part, to change their previous stance on closing the proceedings; they filed a motion to declare *113 the statute invalid on the grounds that it violates the Sixth and Fourteenth Amendments to the United States Constitution. The effect of declaring the closing statute unconstitutional would be, of course, to open up the TPR hearings to the public and media.
At the hearing on the motion, the parents likened TPR cases to criminal prosecutions and contended that, like criminal prosecutions,[2] TPR cases are subject to the imperative of being open to the public and media. They argued that the state should be required to show a compelling governmental interest in closing an entire TPR proceeding. DCFS responded by comparing these cases to some dependency and all adoption cases, for which Florida courts have found legislative closure valid.[3] The agency argued that unlike criminal prosecutions, where there is a specific constitutional right to open hearings, the primary concern of TPR cases is the best interests of children, interests which usually require closed hearings.
In reaching its decision on the constitutional question, the trial court accepted the proposition that TPR cases are to be treated like criminal prosecutions. Proceeding from that premise, the court stated that "any per se rule of closure for criminal proceedings is unconstitutional." Noting the supreme court's decision in In re Adoption of H.Y.T., 458 So.2d 1127 (Fla. 1984), the trial court contrasted TPR proceedings with adoptions, finding substantial differences:
"In adoption[s] ... prospective parents are not in danger of losing any existing rights. In contrast, parents in [TPR] proceedings are faced with a far greater risk of loss.... `[F]ew consequences of judicial action are so grave as the severance of natural family ties.'"
Because the parents in a TPR proceeding face such grave consequences, the trial court reasoned that they "should have a right" to have the court determine whether the hearings should be public.
The trial court further noted that the legislature has now permitted some dependency proceedings to be public, see section 39.408(2)(c), and that such proceedings often precede TPR cases and "involve disclosure of much of the same information." The court concluded that open hearings in TPR cases would promote "fairness and public confidence in the judicial system." The trial court also specifically took notice of the extensive media attention to which this case has already been subjected and concluded that the prior media scrutiny "severely undermines any privacy interests the state or the minor child might have." The trial court therefore declared section 39.467(4) facially overbroad and thus unconstitutional.
We begin our analysis of the trial court's rationale and conclusion with some well-worn principles of constitutional adjudication. Statutes are presumed to be valid and not unconstitutional. Gardner v. Johnson, 451 So.2d 477 (Fla.1984). Courts are required to concede every presumption in favor of the validity of a statute. Griffin v. State, 396 So.2d 152 (Fla.1981). One who challenges the constitutionality of a statute has the burden of demonstrating its invalidity. State v. Bussey, 463 So.2d 1141 (Fla.1985) (burden is on challenger to demonstrate that law does not bear reasonable relationship to proper state objective). Only a clear and demonstrated usurpation of power will authorize judicial interference with legislative action. Eastern Air Lines Inc. v. Department of Revenue, 455 So.2d 311 (Fla.), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 *114 L.Ed.2d 214 (1985). It is therefore the duty of an appellate court to uphold the validity of a statute in all cases where that result can be lawfully reached. Horsemen's Benevolent and Protective Ass'n v. Division of Pari-Mutuel Wagering Department of Business Regulations, 397 So.2d 692 (Fla.1981).
We turn first to the trial court's major premise, that TPR cases are indistinguishable from criminal prosecutions. We have had previous occasion to consider this very same premise. In Ostrum v. Dep't of Health & Rehabilitative Services of the State of Florida, 663 So.2d 1359 (Fla. 4th DCA 1995), we addressed the contention that, because TPR cases are treated like criminal cases, counsel for a parent who concludes that no substantial appellate issue can be raised on appeal and who thus desires to withdraw must comply with the Anders procedure employed in criminal appeals.[4] In rejecting that premise, we said:
"TPR cases are not criminal in nature. They are civil proceedings which happen to affect the substantial interests of the parents and children involved. Parents are entitled to appointed counsel at public expense in TPR proceedings. In the Interest of D.B., 385 So.2d 83, 90-1 (Fla. 1980) (due process clauses of U.S. and Florida constitutions require appointment of counsel for indigent parents when permanent termination of parental rights may result); see also § 39.465(1)(a), Fla. Stat. (1993) and Fla. R. Juv. P. 8.320. The right to counsel in Anders is based on the Sixth Amendment, but the right to counsel in TPR cases does not arise under the Sixth Amendment. D.B., 385 So.2d at 89 (`Right to counsel in dependency proceedings, on the other hand, is governed by due process considerations, rather than the sixth amendment.').
"When a final order terminating parental rights has been entered, as in any civil case, the right to appeal is tempered by the record in the trial court: i.e. whether it contains any good faith possibilities for arguing error. If no error appears in good faith to appointed counsel, there does not appear any reason why counsel should not be able to seek permission to withdraw. The question is whether the full panoply of Anders procedures should attend the effort and further appellate consideration of the appeal.
"We think not. Apart from the fact that TPR cases are purely civil in nature as to which the right to counsel is based not on the Sixth Amendment, and that parental rights may be ended for reasons other than criminal conduct, we think the interest of the children in quitting the uncertainties surrounding their future should be put to rest as soon as it can fairly be done. Hence we think it unnecessary to require the filing of a brief by counsel detailing the proceedings below with a discussion of where error might be suggested and why none actually appears. We similarly think it unnecessary for the three judge panel to give the full appellate consideration of the entire record below that Anders entails. In re Anders Briefs, 581 So.2d 149, 151 (Fla.1991) (appellate court has responsibility to conduct full independent review of record to discover arguable issues apparent on face of record).
"More importantly, however, Anders represents a radical departure from the traditional role of appellate judges as neutral decision makers without bias or prejudice for or against any party. Instead, it turns them into advocates for the party whose counsel seeks to withdraw. Whatever may be the rationale for requiring that departure from neutrality in criminal cases, we are quite unwilling to allow it in purely civil matters. To do so is to favor one class of litigants over the other. That circumstance will understandably be seen by *115 other parties as a classic denial of equal protection of the law."
663 So.2d at 1361. Our decision in Ostrum has since been approved and followed by other Florida District Courts of Appeal. See In the Interest of K.W., 24 Fla. L. Weekly D87, ___ So.2d ___, 1998 WL 889770 (Fla. 2nd DCA Dec. 23, 1998); In re J.A., 693 So.2d 723 (Fla. 5th DCA 1997), and Jimenez v. Department of Health and Rehabilitative Services 669 So.2d 340 (Fla. 3 DCA 1996).
The trial court here essentially gleaned its conclusion from the decisions of the United States Supreme Court in M.L.B. v. S.L.J., 519 U.S. 102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Obviously Santosky had already been decided at the time of our decision in Ostrum and we did not find anything in it suggesting the contrary to our conclusions in Ostrum. On the other hand, M.L.B. was decided after Ostrum, and the trial court could properly have thought thatif it indeed had the effect the trial court concluded it didit displaced Ostrum. And so we turn to the more recent decision in M.L.B. to ascertain whether it holds all TPR proceedings to the procedures of criminal law.
In M.L.B., the State of Mississippi conditioned a mother's right to appeal the severance of her maternal rights on prepayment of all appellate costs including the transcript. The Mississippi Supreme Court denied her petition to proceed without prepayment, saying that the right to proceed without prepayment of costs in Mississippi applies only at the trial level. On certiorari review of that decision, the United States Supreme Court held that, just as a state may not block an indigent petty offender's access to appellate review afforded generally to others, so also a state may not on account of poverty deny appellate review to a parent whose rights with her children have been terminated.
The Court restated the principle that "[c]hoices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as `of basic importance in our society,' rights sheltered by the Fourteenth Amendment against the State's unwarranted usurpation, disregard, or disrespect." 519 U.S. at 116, 117 S.Ct. 555. See Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (prepayment of fees for divorce); Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (right of inmate to marry); Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (right of parent to marry); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (marriage); Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (procreation); and Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (raising children). The Court recalled that the importance of the relationship between parents and children had underlain its decisions affording a parent a partial right to the appointment of counsel and heightening the state's burden of proof in TPR cases. See Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (appointment of counsel for indigent parents in TPR cases not routinely required by Constitution but only on case-by-case basis), and Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (clear and convincing proof standard is constitutionally required in TPR case).
At the same time, the Court pointed out that in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), it had held that once a state affords a right of appeal from a criminal conviction it may not deprive a defendant of access to appellate review by requiring that the appellant procure a transcript at his own expense. The Court also found significant its decision in Mayer v. Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), where the Court had held that a state may not limit free transcripts to only appeals of convictions where the defendant faces incarceration. *116 There was also a narrow category of civil cases in which the Court had held that state must provide access to its civil judicial processes without regard to a party's ability to pay court costs and fees. See Boddie, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113.
Because of the primacy of the parent-child relationship, the Court concluded that Mayer pointed to the proper disposition of the issue: i.e., that the severance of the mother's family ties with her children required that the access to appellate review be treated like petty offense appeals in which a state may not withhold a transcript needed for meaningful review. As with a petty offender, the stakes for the mother were grave because termination of the parental relationship is "irretrievably destructive of the most fundamental family relationship." 519 U.S., at 121, 117 S.Ct. 555. It would be anomalous to hold that a petty offender is entitled to a transcript but not counsel at state expense, but that a parent whose family ties are subject to severance may be denied a transcript but provided a lawyer at state expense if the issues are sufficiently complex. 519 U.S., at 123, 117 S.Ct. 555. The Court concluded that "decrees forever terminating parental rights" must be placed "in the category of cases in which the State may not `bolt the door to equal justice.'" 519 U.S., at 124, 117 S.Ct. 555.
Nearing the end of its analysis, the Court stated that it has "repeatedly noticed what sets parental status termination decrees apart from mine run civil actions, even from other domestic relations matters such as divorce, paternity, and child custody." 519 U.S., at 127, 117 S.Ct. 555. In the Court's concluding words:
"termination decrees work a unique kind of deprivation. In contrast to matters modifiable at the parties will or based on changed circumstances, termination adjudications involve the awesome authority of the State to destroy permanently all legal recognition of the parental relationship. Our ... decisions recognizing that parental termination decrees are among the most severe forms of state action ... have not served as precedent in other areas. We are therefore satisfied that the label `civil' should not entice us to leave undisturbed the Mississippi courts' disposition of this case." [emphasis supplied; citations and some quotation marks omitted]
519 U.S., at 127-128, 117 S.Ct. 555.
It is abundantly clear that the foundation of M.L.B. is the Court's concern for equal and meaningful access to judicial processes, especially where the subject of the judicial proceeding is an interest as fundamental and critical as the family relationship. Where an interest rises to the unusual importance of parental ties, the judicial process due must be such that the final result is reliable, that the risk of error is minimized by the procedures used. Denying a parent access to an appellate remedy reduces the likelihood that the result will be reliable and correct, and it inhibits society's confidence that, because the procedures were fair and effective to that end, the right result was reached. Hence, our own analysis of M.L.B. makes clear that the Court has not required that TPR cases be treated like criminal prosecutions in all respects, and certainly not with regard to public closure of such proceedings.
So too with the parents reliance on Globe Newspaper Co. v. Superior Court for the County of Norfolk, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). As Justice O'Connor said in her concurring opinion about the decision in Globe Newspaper:
"In Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Court held that the First Amendment protects the right of press and public to attend criminal trials. I do not interpret that decision to shelter every right that is `necessary to the enjoyment of other First Amendment rights.' Instead, Richmond Newspapers rests upon our long history *117 of open criminal trials and the special value, for both public and accused, of that openness. As the plurality opinion in Richmond Newspapers stresses, `it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted.' Thus, I interpret neither Richmond Newspapers nor the Court's decision today to carry any implications outside the context of criminal trials." [c.o.]
457 U.S., at 611, 102 S.Ct. 2613 (O'Connor, J., concurring). At the same time, Chief Justice Burger pointed out in dissent that under the Court's decision in Globe Newspapers:
"Although states are permitted, for example, to mandate the closure of all proceedings in order to protect a 17-year-old charged with rape, they are not permitted to require the closing of part of criminal proceedings in order to protect an innocent child who has been raped or otherwise sexually abused."
457 U.S., at 612, 102 S.Ct. 2613 (Burger, C.J., dissenting). As with M.L.B. we conclude that there is nothing in Globe Newspapers holding that TPR proceedings are to be treated like criminal trials in all respects and especially that they are required by the Sixth Amendment to be open.
We therefore once again reject the Sixth Amendment model for TPR proceedings. Under M.L.B., the court proceedings in TPR cases are still civil, even though they partake of some of the aspects of constitutional adjudication in certain criminal prosecutions. It is only some of the process that is due in TPR cases that can conceivably be likened to criminal cases under M.L.B. The right to judicial access and the right to counsel in TPR cases are part of a process designed to insure that the final result is reliably the correct one. Just as the purpose in the process in criminal cases is to assure that only the guilty are convicted, so in TPR cases the process is designed to guarantee that only parents who have been reliably and confidently shown to have violated statutory norms can have their family associational rights permanently ended.
None of this applies to the issue we face in this case. The State of Florida has made a policy decision through its elected representatives that it is in the best interest of all that TPR hearings be conducted behind closed courthouse doors.[5] Indeed, given the nature of the proceeding, the kind of evidence that is usually adduced in such cases, and the reasonably predictable adverse effects on the children caused by public knowledge of the underlying facts, it seems apparent to us that the state has substantial and compelling governmental purposes to support it. We distinguish the present situation from Globe Newspaper, where the Court found the harm to the child witness insufficient to carry the State's burden of a governmental interest compelling enough to overcome the Sixth Amendment requirement of a public criminal trial. In a TPR case, where the entire purpose is to protect young and vulnerable children, we think the State of Florida has a much stronger interest in closing such hearings. That interest is apparent from the evidence in this case demonstrating that public hearings would have a direct adverse effect on the child who is the subject.
We are also influenced by our own supreme court's decision in Barron v. Florida Freedom Newspapers Inc., 531 So.2d 113 (Fla.1988), which involved the closure of a substantial part of a divorce case file. Admittedly the court there held that there is a strong presumption of openness in civil judicial proceedings in Florida state *118 courts and that the burden for closing civil court proceedings is on the party seeking closure. But the court also stated that:
"While Florida, as a matter of public policy, has expressly made certain civil proceedings confidential (adoptions, § 63.162, Fla. Stat. (1987); paternity, § 742.031, Fla. Stat. (1987); juvenile proceedings, § 39.09 and 39.408, Fla. Stat. (1987)) and some states have enacted legislation limiting public access to divorce proceedings, the Florida Legislature has chosen not to do so." [e.s., c.o.]
531 So.2d, at 119. The court thus recognizes a small number of exceptions to the general policy of openness where the legislature has expressly deemed a discrete kind of proceeding in need of shelter from the affecting glare of public attention. All of the categories in the recognized exception in Barron concern children or their relationship to their families. Undeniably within this distinct category of exceptions in Barron are TPR proceedings.[6] Thus the statute we construe today is one of the very few statutes enforcing an express public policy of closure that are implicitly recognized and tolerated in Barron.
In the end, we are not satisfied that the parents have carried the heavy burden imposed on them and that they have made it to appear clearly that, as they have argued here and in the trial court, the statute is unconstitutional under the Sixth and Fourteenth Amendment. Accordingly we quash the decision holding section 39.467 unconstitutional and return the case to the circuit court for further proceedings.
To facilitate further review, however, of this issue of great public importance, we hereby certify the following question of constitutionality to the supreme court:
"Is § 39.467(4), now § 39.809(4), Fla. Stat. (Supp.1998), requiring a mandatory closure of all hearings in TPR proceedings valid under the United States and Florida constitutional provisions respecting access of the public and media to judicial proceedings?"
STEVENSON and SHAHOOD, JJ., concur.
NOTES
[1] See now § 39.809(4), Fla. Stat. (Supp.1998).
[2] See U.S. CONST., amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a ... public trial...."); and Art. I, § 16(a), Fla. Const. ("In all criminal prosecutions the accused shall, upon demand ... have a ... public trial....").
[3] See In re Adoption of H.Y.T., 458 So.2d 1127 (Fla.1984) (statute requiring closure in adoption cases is valid), and Mayer v. State, 523 1171 (Fla. 2d DCA 1988) (statute requiring closure of dependency proceedings not unconstitutional).
[4] See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[5] In In re the Adoption of H.Y.T., 458 So.2d 1127 (Fla.1984), our state supreme court upheld the statute closing all adoption proceedings. See § 63.162 Fla. Stat. (1997). The attack in H.Y.T. was based on the media's right of access to judicial proceedings rather than on a comparison, as here, with criminal prosecutions.
[6] We do not understand the court's listing of statutes to be exhaustive, merely suggestive.