825 So.2d 1057 (2002)
S.B., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D01-13.
District Court of Appeal of Florida, Fourth District.
September 18, 2002.
*1058 Craig A. Boudreau, West Palm Beach, for appellant.
Charles D. Peters, West Palm Beach, for appellee.
STONE, J.
We affirm the trial court's summary denial of a petition entitled "Motion to Dismiss and Remedy," thereby confirming the adjudication of dependency of S.B.'s two daughters, K.K. and B.B.
In January 1998, the court entered an order adjudicating the children dependent. S.B. was personally served and had notice of hearing but failed to appear at the arraignment hearing. The fathers of the children, who subsequently were awarded custody after they completed their case plans, appeared at the hearing and gave their consent to the adjudication of dependency. The court proceeded as though S.B. had consented pursuant to section 39.506(3), Florida Statutes, which states:
Failure of a person served with notice to personally appear at the arraignment hearing constitutes the person's consent to a dependency adjudication.
Both S.B. and her appointed counsel were subsequently present for the disposition hearing at which the court adjudicated her children dependent. She did not attempt to withdraw consent before the disposition hearing, although she was authorized to do so under rule 8.315, Florida Rules of Juvenile Procedure.
On February 25, 1998, her attorney filed a motion to vacate and set aside the finding of consent by default. In her motion, S.B. admits receiving the summons and notice for the arraignment hearing but states that she decided to submit a letter to the judge in lieu of attending. The judge's response was a return letter which stated that he could not accept ex parte communications. There is no record evidence of a ruling on her motion and S.B. did not appeal the order adjudicating her children dependent.
The record reflects numerous instances in these, and related proceedings, in which S.B. evaded service, refused to cooperate with the department and did not complete her case plan, failed to supply requested papers, disregarded subpoenas and failed to appear at noticed proceedings or depositions, avoided service of a warrant for body attachment, failure to comply with a case plan and issuance of a contempt order. In short, she has demonstrated a pattern of conduct reflecting her own waivers and intentional failure to cooperate with her attorney, the Department of Children and Families, or the court.
S.B. asks that this court construe her "Motion to Dismiss and Remedy" as either a motion for relief from judgment under rule 1.540, Florida Rules of Civil Procedure, or rule 8.270, Florida Rules of Juvenile Procedure, or a petition for writ of habeas corpus. She alleges that her appointed counsel was ineffective. We hold that, although she has the right to appointed counsel, she has no right to collaterally challenge her counsel's performance other than the filing of a malpractice action. See *1059 Windsor v. Gibson, 424 So.2d 888, 889 (Fla. 1st DCA 1982)(noting that public defender, unlike state attorney, is an advocate and, just like private attorney, owes a duty to indigent client).
Our holding conflicts with that of the First District's in L.W. v. Dep't of Children and Families, 812 So.2d 551 (Fla. 1st DCA 2002). There, the court held that indigent parents, who have a constitutional right to court-appointed counsel in dependency proceedings, also have a right to competent counsel. Both parents in L.W. faced felony criminal charges stemming from the allegations of child abuse and neglect. In considering whether the parents had a right to challenge the effectiveness of their court-appointed counsel, the First District opined:
Although no Florida court has previously addressed this precise issue, it seems to us that logic and common sense compel the conclusion that, if a parent's constitutional right to court-appointed counsel in appropriate dependency proceedings is to consist of something more than a meaningless formality, that right must include the right to effective assistance by the attorney who is appointed.
Id. at 555.
In reaching this conclusion, the court applied the same standard used by courts to determine the effectiveness of counsel in criminal cases, reasoning that it was "well-established" and "fairly straightforward." Id. at 556.
Recognizing the far-reaching effects of its holding, the First District certified the following two questions to the supreme court:
I. ARE PARENTS WHO ARE CONSTITUTIONALLY ENTITLED TO COURT APPOINTED COUNSEL IN DEPENDENCY PROCEEDINGS ALSO ENTITLED TO COMPETENT ASSISTANCE OF COUNSEL?
II. IF THE ANSWER TO THE PRECEDING QUESTION IS "YES," IS A PETITION FILED IN THE TRIAL COURT SEEKING A WRIT OF HABEAS CORPUS A PROPER PROCEDURE BY WHICH TO RAISE A CLAIM THAT A PARENT DID NOT RECEIVE COMPETENT ASSISTANCE FROM APPOINTED COUNSEL?
Id. at 558.
The court in L.W. chose to answer both questions in the affirmative. We decline to follow the same course here, however, because S.B., unlike the parents in L.W., did not have a constitutional right to counsel in the first place; her right to counsel was purely statutory.[1]
The supreme court has carved out only two specific circumstances in dependency proceedings where a constitutional right to counsel arises, neither of which applies here. See In the Interest of D.B., 385 So.2d 83, 89 (Fla.1980). Appointed counsel "is necessarily required under the due process clause of the United States and Florida Constitutions, in proceedings involving the permanent termination of parental rights to a child, or when the proceedings, because of their nature, may lead to criminal child abuse charges." Id. Here, S.B. was not criminally charged, S.B. consented to the adjudication of dependency by default, and both of the fathers requested that DCF not pursue termination of her parental rights.
Although we distinguish the instant case from L.W. on the basis that the former did not involve a constitutional right *1060 to counsel, we, nevertheless, also reject the First District's conclusion that the constitutional right to counsel necessarily implicates the right to competent counsel. A dependency proceeding is not a criminal proceeding; a criminal defendant's right to counsel is derived from the Sixth Amendment of the United States Constitution, whereas a parent's right to counsel in a dependency proceeding, where termination of parental rights or incarceration is threatened, arises from due process considerations. D.B., 385 So.2d at 89; Ostrum v. Dep't of Health and Rehabilitative Servs., 663 So.2d 1359 (Fla. 4th DCA 1995)(holding that because of the civil nature of termination of parental rights proceedings and the interest in providing stability for the children, the full panoply of Anders procedures is not required).
This court has previously refused to equate termination of parental rights (TPR) proceedings with those of a criminal nature. See Dep't of Children and Family Servs. v. Natural Parents of J.B., 736 So.2d 111 (Fla. 4th DCA 1999)(upholding statute requiring that all TPR hearings be closed to the public and media as constitutional). Given that dependency involves only temporary loss of custody, our reasoning in J.B. applies to dependency proceedings as well:
We therefore once again reject the Sixth Amendment model for TPR proceedings. Under M.L.B. [v. S.L.J., 519 U.S. 102, 117, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996)], the court proceedings in TPR cases are still civil, even though they partake of some of the aspects of constitutional adjudication in certain criminal prosecutions. It is only some of the process that is due in TPR cases that can conceivably be likened to criminal cases under M.L.B. The right to judicial access and the right to counsel in TPR cases are part of a process designed to insure that the final result is reliably the correct one. Just as the purpose in the process in criminal cases is to assure that only the guilty are convicted, so in TPR cases the process is designed to guarantee that only parents who have been reliably and confidently shown to have violated statutory norms can have their family associational rights permanently ended.
Id. at 117.
Here, it is abundantly clear that the minimal process due a parent in dependency proceedings was served, despite S.B.'s efforts to avoid receiving notice and that the children were adjudicated dependent because she simply chose not to respond. When she did appear in court, an attorney was appointed to represent her, although she had already consented to the order the trial court eventually entered by failing to appear at the advisory hearing. Her failure to appear had nothing to do with her attorney, as he had not yet been appointed to represent her. S.B. was given numerous opportunities to maintain custody of her children by demonstrating that she was in a position to meet the children's needs, but she did not act upon them. Meanwhile, the children's fathers have shown that they can provide the care their children need by complying with their case plans and meeting all of the other requirements DCF has imposed. As such, we find no reason to entertain S.B.'s untimely petition to, essentially, re-visit the order adjudicating her children dependent.
We note that dependency proceedings are designed not to punish the parents, but to protect the children who are, themselves, prisoners. Therefore, to give parents the same relief recognized in postconviction criminal cases serves only to further disrupt the lives of the children years after a dependency decision has *1061 been made. See L.W., 812 So.2d at 561 (Wolf, concurring).
We do not recognize the right to competent counsel in dependency proceedings, whether the right to appointed counsel is statutory or constitutional. S.B.'s petition is, as the juvenile court ruled, legally insufficient, and we will not treat it as a petition for writ of habeas corpus.
Therefore, the order is affirmed.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] Indigent parents have the right to counsel in all dependency cases and parents who are unable to afford counsel must be appointed counsel. § 39.013(1), Fla. Stat. (1999).