851 So.2d 689 (2003)
S.B., Petitioner,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Respondent.
No. SC02-2262.
Supreme Court of Florida.
July 10, 2003.
Craig A. Boudreau, West Palm Beach, FL, for Petitioner.
*690 Jeffrey Dana Gillen and Crystal Y. Yates-Hammond, West Palm Beach, FL, for Respondent.
QUINCE, J.
We have for review S.B. v. Department of Children & Families, 825 So.2d 1057 (Fla. 4th DCA 2002), which expressly and directly conflicts with the decision in L.W. v. Department of Children & Families, 812 So.2d 551 (Fla. 1st DCA 2002). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons stated below, we approve the result reached by the Fourth District and hold that S.B. did not have a constitutional right to counsel and therefore could not collaterally challenge the effectiveness of counsel.

Facts
In October 1997, an investigator with the Department of Children and Families (the Department) filed a verified petition for adjudication of dependency of S.B.'s minor daughters, K.K. and B.B. The Department moved for emergency custody of the children, which the judge granted, and the children were removed from the home on the same day. The children have different fathers. One of the fathers consented to the emergency custody, and the other father could not be reached.
Despite being personally served with a notice of hearing, S.B. did not attend the arraignment. Because S.B. failed to appear, the court entered a default judgment against her and proceeded as though S.B. had consented to an adjudication of dependency pursuant to section 39.506(3), Florida Statutes (1997), which states:
Failure of a person served with notice to personally appear at the arraignment hearing constitutes the person's consent to a dependency adjudication.
Both fathers appeared and both consented to the adjudication.
S.B. then wrote a letter to the trial judge stating she wanted representation. She later asserted that this request was made in lieu of her appearance and was an attempt to withdraw consent to the dependency. The trial judge responded with a form letter stating that the court could not accept ex parte communications.
The Department filed proposed case plans, and on January 5, 1998, a hearing was held for disposition and case plan approval. S.B. appeared at this hearing, requested representation by counsel, and the trial court appointed an attorney to represent her. On January 27, 1998, the court entered an "Order of Adjudication of Dependency, Disposition and Approval of Case Plans for Mother and Fathers." The January 27 order stated:
The children [K.K.] and [B.B.] shall be adjudicated dependent, subject to ruling on mother's Motion to Vacate Mother's Consent by Default and to set aside Case Plan for mother.
Both K.K. and B.B. were placed in the custody of B.B.'s natural father. At the time of the January 27 order, S.B. had not yet filed a motion to withdraw her consent to the adjudication. S.B. did not appeal the order or the approved case plans. On February 25, 1998, S.B.'s appointed counsel filed a document captioned, "Mother's Motion to Vacate and Set Aside Consent by Default." The record does not indicate that this motion was set for hearing or ruled on.
On March 2, 1998, the court entered a default judgment against S.B. for her failure to serve a response to the supplemental petition filed December 2, 1997, or file the necessary papers required by law. During the months following the default judgment, and in the various legal proceedings in which S.B. was involved,
S.B. evaded service, refused to cooperate with the department and did not *691 complete her case plan, failed to supply requested papers, disregarded subpoenas, and failed to appear at noticed proceedings or depositions, avoided service of a warrant for body attachment, [failed] to comply with a case plan and issuance of a contempt order.
S.B., 825 So.2d at 1058.
The children were ultimately placed with their respective fathers after the fathers completed their case plans. On July 1, 1999, over a year after the default judgment was entered, the trial court received a letter from S.B. complaining that her court-appointed counsel never contacted her after their initial meeting a year and a half earlier, and she was only "properly" notified of one hearing in January 1998, which was the hearing she attended. S.B. also contacted The Florida Bar and filed a complaint against her court-appointed counsel. Counsel responded to the bar complaint, stating that he attempted on several occasions to reach S.B. by phone and by mail, to no avail.
In November 2000, S.B. filed a document captioned, "Motion to Dismiss and Remedy." Attached to the document was the Florida Bar complaint with counsel's response and S.B.'s reply. S.B. alleged that the attachments "invalidate any and all orders, findings, decisions of any kind" made in her case. The motion was denied as legally insufficient. S.B. then filed a "Motion for Clarification of Order on Motion to Dismiss and Remedy." That motion was denied as well.
S.B. then filed a "Motion for Appeal," asking the Fourth District to construe her motion as a motion for relief from judgment or as a petition for writ of habeas corpus. The Fourth District affirmed the trial court's summary denial of S.B.'s petition, holding:
[A]lthough she has the right to appointed counsel, she has no right to collaterally challenge her counsel's performance other than the filing of a malpractice action.
S.B., 825 So.2d at 1058. The Fourth District acknowledged conflict with L.W., in which the First District held that a parent who has been appointed counsel in a dependency proceeding may collaterally attack counsel's competency. S.B., 825 So.2d at 1059.
We agree with the Fourth District's ultimate resolution of this case and find that a party in a dependency proceeding has no right to a collateral proceeding questioning appointed counsel's performance. We therefore disapprove the holding in L.W. to the extent it conflicts with this holding.

Discussion
While dependency proceedings are civil in nature, parents must be informed of their right to counsel at all stages of a dependency proceeding, and if a parent is indigent and wishes to have representation, counsel must be appointed. See § 39.013(1), Fla. Stat. (2001). Subsection (9)(a) of section 39.013 provides:
At each stage of the proceedings under this chapter, the court shall advise the parents of the right to counsel. The court shall appoint counsel for indigent parents. The court shall ascertain whether the right to counsel is understood. When right to counsel is waived, the court shall determine whether the waiver is knowing and intelligent. The court shall enter its findings in writing with respect to the appointment or waiver of counsel for indigent parents or the waiver of counsel by nonindigent parents.
§ 39.013(9)(a), Fla. Stat. (2001). Thus, section 39.013 gives indigent parents the right to court-appointed counsel in these civil proceedings.
*692 S.B. was appointed counsel but argues that her appointed counsel was ineffective, and that because she had a right to a court-appointed attorney, she has the right to pursue a claim of ineffectiveness of counsel in a collateral proceeding by filing a petition for writ of habeas corpus. In support of this argument, she cites to the First District's decision of L.W. In L.W., the First District found, under the facts of that case, that the indigent parents could pursue a habeas proceeding alleging that appointed counsel was ineffective. The parents in L.W. were faced with a petition for dependency where the father was alleged to have sexually abused the stepdaughter and the mother failed to protect her daughter. The petition also alleged that two sons were at risk for prospective abuse based on the alleged sexual abuse of the stepdaughter and the mother's failure to protect. The parents denied the allegations, and an attorney was appointed to represent them. In finding that the parents in L.W. had a constitutional right, not just a statutory right, to the appointment of counsel, the First District relied on this Court's opinion in In re D.B., 385 So.2d 83 (Fla.1980). In D.B. we said:
We reject the holdings of both the state circuit court and the United States District Court that all indigent participants in juvenile dependency proceedings are entitled, as a fundamental right, to have counsel supplied to them by the state. We find that a constitutional right to counsel necessarily arises where the proceedings can result in permanent loss of parental custody. In all other circumstances the constitutional right to counsel is not conclusive: rather, a right to counsel will depend upon a case-by-case application of the test adopted in Potvin v. Keller, 313 So.2d 703 (Fla. 1975).[[1]] We recognize that in all instances the trial court must ensure that proper notice and an opportunity to be heard be provided to the participants.
385 So.2d at 87. In D.B. we also said, "We agree in part with the Davis[[2]] court and the trial judge that counsel is necessarily required under the due process clause of the United States and Florida Constitutions, in proceedings involving the permanent termination of parental rights to a child, or when the proceedings, because of their nature, may lead to criminal child abuse charges." Id. at 90.
Thus, we found in D.B. that there was a constitutional right to counsel in dependency proceedings under two circumstances: when the proceedings may result in the permanent termination of parental rights, or when a parent may be charged with criminal child abuse. The constitutional right to counsel in the former situation, proceedings which may result in the permanent termination of parental rights, is based on the recognition that there is a constitutionally protected interest in preserving the family and raising one's children. See Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 *693 (1972); accord Padgett v. Dep't of Health & Rehab. Servs., 577 So.2d 565, 570 (Fla. 1991) (recognizing a constitutionally protected fundamental liberty interest in parents raising their children "free from the heavy hand of government paternalism"). The right to counsel where criminal charges may be brought, on the other hand, flows from the Sixth Amendment right to counsel as applied to the states by the Fourteenth Amendment. However, neither of these two circumstances is present in this case.
In enacting chapter 39, the Legislature has determined that under certain circumstances the State must provide for the care, safety, and protection of children, and has recognized that most parents want to be competent caregivers and providers for their children. To aid in these goals, a petition for dependency generally is filed to protect a child from neglect, abuse, or abandonment, and to aid the family in the reunification process. The primary goal in a dependency proceeding is to protect the child; it is not to punish the caregiver. See § 39.501(2), Fla. Stat. (2001) ("The purpose of a petition seeking the adjudication of a child as a dependent child is the protection of the child and not the punishment of the person creating the condition of dependency."). In fact, the health and safety of the child is of paramount concern, and the goal is to address the concern in the most economic, effective, obvious, and direct manner. See § 39.001(1)(b)1., Fla. Stat. (2001); see also § 39.001(1)(b)3., Fla. Stat. (2001) ("The intervention should intrude as little as possible into the life of the family, be focused on clearly defined objectives, and take the most parsimonious path to remedy a family's problems."). To that end, the Florida Rules of Juvenile Procedure provide for the active participation of the judge, no jury, and the appointment of a guardian ad litem on direct behalf of the child. See, e.g., Fla. R. Juv. P. 8.255(d) (permitting the court to call a child to testify at a dependency hearing); Fla. R. Juv. P. 8.330(a) (providing that an adjudicatory hearing in dependency proceedings shall be conducted by the judge without a jury); Fla. R. Juv. P. 8.215 (permitting any party at any stage to request that the court appoint a guardian ad litem on behalf of the child). The procedures and goals as they relate to the dependency of a child are different in form and function from those procedures and goals in place for criminal adjudications. In fact, the kinds of issues addressed in a collateral proceeding in criminal cases are part and parcel of the procedures already in place in dependency proceedings. Creating an additional process for a collateral proceeding in dependency matters would be duplicative of the safeguards already in place, and would undermine the stated goal of parsimoniously remedying the family's problems.
As the Fourth District pointed out, the parents in this case were not criminally charged, and there is nothing to suggest the Department was planning to pursue termination of parental rights. The parents were personally served and given notice of the arraignment for the dependency proceeding. The fathers of the two children appeared at the hearing, gave their consent to an adjudication of dependency and were subsequently awarded custody of their respective children after completion of the case plans. S.B., on the other hand, did not appear at the arraignment, and the trial court proceeded as if she had consented to the finding of dependency. However, when S.B. made it known to the trial judge that she wanted the assistance of an attorney, the trial court appointed counsel. This case was, therefore, nothing more than the type of dependency case where the indigent parent had a statutory right to appointed counsel. The constitutional *694 right to counsel is not implicated in this case. Because there is no constitutional right to counsel under the circumstances of this case, we likewise find that there is no right to collaterally challenge the effectiveness of counsel.

Conclusion
We conclude that in civil dependency proceedings which do not involve the possibility of criminal charges against the parent or the permanent termination of parental rights, there is no right to pursue a collateral proceeding questioning the competency of court-appointed counsel. We therefore approve the decision of the Fourth District to the extent that the court found no right to collaterally challenge the effectiveness of counsel under the circumstances of this case, and we disapprove the decision of the First District to the extent that it conflicts with this decision.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, CANTERO, and BELL, JJ., concur.
NOTES
[1] In Potvin v. Keller, 313 So.2d 703 (Fla. 1975), we said that the right to counsel in dependency proceedings would depend on the potential length of the parent-child separation, the degree of parental restrictions on visitation, the presence or absence of parental consent, the presence or absence of disputed facts, and the complexity of the proceeding. Of course, the Legislature has since enacted section 39.013 which gives indigent parents the right to counsel in dependency proceedings.
[2] The United States District Court for the Southern District of Florida in Davis v. Page, 442 F.Supp. 258 (S.D.Fla.1977), held that indigent parents had a constitutional right to appointed counsel in dependency proceedings.