913 So.2d 764 (2005)
C.L.R., Father of C.R., C.R., E.R., M.R., etc., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D03-3323.
District Court of Appeal of Florida, Fifth District.
November 10, 2005.
*765 Timothy A. Straus, of Moyer, Straus & Patel, P.A., Altamonte Springs and Ryan Thomas Truskoski, of Ryan Thomas Truskoski, P.A., Orlando, for Appellant.
C.L.R., Marlborough, MA, pro se.
Patricia M. Swartz, St. Augustine, for Appellee.

ON MOTION FOR REHEARING
PER CURIAM.
We grant appellant's motion for rehearing, withdraw our prior opinion and substitute the following in lieu thereof.
C.L.R. appeals the denial of his motion for hearing on issues raised in his pro se pleading filed in a dependency action. Because we conclude that C.L.R. was entitled to notice and an opportunity to be heard in his children's dependency proceeding, we reverse.
C.L.R. is the father of six children. He is divorced from the children's mother. As part of the divorce, the mother was given primary residential responsibility for the children. C.L.R. has significant mental problems and was placed under a "no contact" order with the children during the divorce. He has been accused of inflicting "severe physical and emotional harm" on the children.[1]
The children were taken into custody by the Department of Children and Families ["DCF"] on December 12, 2002. At the time, five of the children were already living outside the mother's home. A petition for dependency was filed on January 21, 2003. It sought to have the children declared dependent with respect to both parents. It alleged that the parents had neglected, abused and/or abandoned their children, and that the children were at risk for prospective abuse and neglect.
C.L.R.'s whereabouts were unknown when the petition was filed. However, he voluntarily appeared in the proceedings on April 28, 2003. Counsel was appointed to represent him, but was permitted to withdraw on May 22, 2003 because of conflict with C.L.R. On June 3, 2003, substitute counsel also declined representation. No other counsel was appointed.
In the meantime, at a hearing on May 22, 2003, the mother consented to the dependency. C.L.R., who appeared without counsel, denied the allegations of the petition. Both parties attended a judicial review on June 9, 2003.[2] During this hearing, DCF orally dismissed the dependency *766 action as to C.L.R. No further pleadings or papers were ever served on him.[3]
On June 18, 2003, the mother filed a motion for reunification with all of her children but the eldest, who desired to live elsewhere. The court deferred ruling on the motion until a psycho-social evaluation could be performed on the mother. After a favorable report was obtained, the mother renewed her motion for reunification. The court granted the motion on July 25, 2003, and returned the children to their mother's custody, but left the children in the protective supervision of DCF.
On August 19, 2003, C.L.R., acting pro se, filed three documents  an "Order to Show Cause," a motion for hearing and a "Request for Discovery." The "order" asserted error in: (1) the failure to appoint new counsel to represent him; (2) the refusal to allow him to take part in the dependency action; (3) the return of the children to an abusive environment; (4) the issuance of orders regarding the children and himself without proper notice of the proceedings; (5) DCF's failure to file a motion to disqualify the trial court on the basis of unspecified "prejudice"; and (6) the failure to provide legal counsel to the parties' eldest child, who was still living out of the home. C.L.R. asked for a telephonic hearing on his "Order to Show Cause," as he was living in Massachusetts.
In an order dated August 21, 2003, the court denied C.L.R.'s request for a hearing and for discovery on the ground that C.L.R. had been dismissed from the dependency action on June 9, 2003. After this appeal was taken, the parties' eldest child was placed in the long-term custody of non-relatives with the understanding that no further effort would be made to reunify her with her parents. The court terminated protective supervision of the remaining children on November 24, 2003.
The trial court's rejection of C.L.R.'s objection to his exclusion from the proceedings was error. The dismissal of the action as to C.L.R. did not make him a non-party to the dependency. Florida law does not require the filing of dependency actions against both parents. It permits DCF to allege acts committed by only one parent as the basis of the petition and to obtain an adjudication as to only one parent. See § 39.501(3)(c), Fla. Stat. Parents who are not named in the petition are nonetheless considered "parties" to the action under Florida Rule of Juvenile Procedure 8.210(a), which states:
(a) Parties. For the purpose of these rules the term "party" and "parties" shall include the petitioner, the child, the parent(s) of the child, the department, and the guardian ad litem or the representative of the guardian ad litem program, when the program has been appointed.
Accord B.C. v. Department of Children and Families, 864 So.2d 486 (Fla. 5th DCA 2004). As "parties," the parents are entitled to notice of all proceedings and must be served with all pleadings, orders and papers, regardless of whether they are "named" as a defendant in the dependency proceeding. See Fla. R. Juv. P. 8.225(c). The Florida Statutes similarly recognize the right of all parents to notice of all proceedings. Section 39.502, Florida Statutes, provides:
(1) Unless parental rights have been terminated, all parents must be notified of all proceedings or hearings involving the child. Notice in cases involving shelter hearings and hearings resulting *767 from medical emergencies must be that most likely to result in actual notice to the parents.
Id.
There was no error, however, in the failure to appoint counsel to represent C.L.R. In S.B. v. Department of Children and Families, 851 So.2d 689, 692 (Fla. 2003), the supreme court explained the constitutional right to counsel in dependency proceedings and its limitations. This plainly is not a case in which C.L.R. has a constitutional right to counsel. If a right exists, it is purely statutory. The legislature codified the statutory right to counsel in 1995. As originally enacted, the right was limited to indigent parents who had been "threatened with criminal charges based on the facts underlying the dependency petition or a permanent loss of custody of their children...." Ch. 95-228, § 5, Laws of Florida. The 1995 provision morphed into its current form in 1998 as part of Chapter 98-403, § 23, Laws of Florida, and now states that "Parents who are unable to afford counsel must be appointed counsel." § 39.013(1), Fla. Stat. (2003). The reference to "parents" appears to refer to those parents who are respondents; parents against whom allegations of the acts or omissions giving rise to the need for dependency are made. See § 39.501(3)(c), Fla. Stat. (2003); § 39.505, Fla. Stat. (2003). Such parent or parents identified in the petition as to whom an order of dependency is sought are to be appointed counsel. A parent may be a "party" by operation of the rule, but if not named as an actor causing the need for dependency, he or she is not entitled to appointed counsel pursuant to section 39.013(1).
On appeal, DCF mainly contends that the trial court properly refused to address the issues raised in C.L.R.'s "order to show cause" because the dependency proceeding was essentially over when C.L.R.'s motion was made on August 19. Because no further proceedings were pending, DCF contends that C.L.R.'s motion was untimely and/or moot.
We disagree that C.L.R.'s motion was untimely or moot. As the children's father, he had a right to have notice in advance of the proceedings, and there is no record evidence that he did have notice. Moreover, the children were still under the continuing protective supervision of DCF when the motion was made.
This brings us to the appropriate remedy. Even though the trial court has now terminated supervision over all of the children, and we can detect no prejudice to C.L.R. given the facts in this record and the lack of merit of any of his other issues on appeal, C.L.R. was, nevertheless, entitled to be heard on the question of reunification. A new hearing will have to be conducted for this purpose.
AFFIRMED in part; REVERSED in part; and REMANDED.
PETERSON, GRIFFIN and PALMER, JJ., concur.
NOTES
[1] In 2000, a licensed social worker was asked to make recommendations to the court regarding a request for visitation made by C.L.R. In her report, she stated that:

the children had been physically beaten with belts, fists and spatulas on numerous occasions. [C.L.R.] had covered them in oil and would chant in strange tongues over them. He would act crazy, talking to himself and answering in a different voice. [C.L.R.] also strangled one of the children to the point he turned gray. He also beat one of them severely and locked the child in the closet for hours. While visiting their father in Vero Beach the children were repeatedly questioned about their mother, threatened, and unable to call home. In her recommendations Ms. Herhold stated that if this were a DCF case [C.L.R.] would more than likely have had his parental rights severed due to the severe physical and emotional harm he inflicted on the children.
[2] C.L.R. asserts that he was physically removed from the hearing at some point.
[3] A few of the early pleadings were served on one or the other of the two attorneys who had withdrawn.